**CITY OF DALLAS, Texas, Appellant,**

v.

**VRC LLC, Appellee.**

No. 05–06–01056–CV.

Court of Appeals of Texas,
Dallas.

May 19, 2008.

Rehearing Overruled Aug. 19, 2008.

Kenneth R. Bennett, Barbara E. Rosenberg, James Pinson, Office of the City Attorney, Dallas, TX, for Appellant.

James C. Mosser, Mosser Mallers PLLC Lawyers, Byron Kevin Henry, Cowles & Thompson, PC, Dallas, TX, for Appellee.

Before Justices MORRIS, O'NEILL, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

The City of Dallas brings this interlocutory appeal from the trial court's denial of its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2006). In a single issue, the City argues that appellee VRC LLC failed to plead a viable takings claim against the City so as to overcome the City's governmental immunity. For the reasons discussed below, we agree with the City. Accordingly, we reverse the trial court's order denying the plea, and we dismiss VRC's state and federal takings claims for lack of jurisdiction.

### BACKGROUND

For purposes of resolving the City's plea to the jurisdiction, the following facts are not controverted. On January 26, 2000, the Dallas City Council adopted Ordinance 24175 setting the maximum rate for a non-consent tow for vehicles weighing not more

than 10,000 pounds at $95. *See* DALLAS, TEX., CODE § 48A–43(a)(1) (2007). On December 21, 2001, the State of Nevada issued a limited-liability company charter to VRC. In February 2002, VRC corresponded with the City on the issue of the nonconsent tow rate, arguing that $95 was below the price at which a towing company could make a profit. On March 20, 2002, the State of Texas issued a certificate of authority to VRC to do business in Texas, and on January 15, 2003, the City granted VRC's application for a nonconsent towing license. In July 2002, VRC obtained the results of a cost study concluding the per-tow rate required for VRC to make a reasonable rate of return was $135. Nevertheless, between 2002 and 2004, VRC performed nonconsent tows within Dallas.

■ On February 12, 2003, VRC filed its "Original Petition for Temporary Restraining Order, Temporary and Permanent Injunction, Declaratory Judgment and Damages," alleging that the City regulated the price of nonconsent tows below a price that was fair and reasonable. VRC asserted causes of action for a taking pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 17 of the Texas Constitution, due process violation and confiscatory taking, and a violation of the Equal Protection Clause of the United States Constitution. The case was removed to federal court, and subsequently VRC's federal takings claim, state law claims, and substantive and procedural due process claims were remanded to state court.[1]

The City's amended plea to the jurisdiction asserted the trial court lacked subject matter jurisdiction over VRC's suit for two reasons: (1) the City had governmental immunity from suit on VRC's state takings claim because the alleged facts affirmatively demonstrated VRC had not suffered a taking, damaging, or destruction of property for public use, and (2) the federal takings and due process claims were unripe and could never ripen because VRC would have an adequate state procedure only if the facts alleged constituted a taking. Ultimately, the trial court denied the City's amended plea to the jurisdiction, but granted VRC's request for leave to amend its pleadings. VRC's third amended original petition is its live pleading; it asserts causes of action for declaratory judgment and violations of substantive and procedural due process in addition to its takings claims.[2]

### STANDARD OF REVIEW

■ A plea to the jurisdiction based on sovereign immunity challenges a trial court's jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex.2007) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004)). A plea questioning the trial court's jurisdiction raises a question of law that we review *de novo*. *Id.* We focus first on the plaintiff's petition to determine whether the pleaded facts affirmatively demonstrate that jurisdiction exists. *Id.* We construe the pleadings liberally, looking to the pleader's intent. *Id.* If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportuni-

---

1. The City requests us to strike copies of certain pleadings filed in federal court included in VRC's appendix to its brief and also included in the clerk's record at VRC's request. VRC requests us to take judicial notice of those pleadings. The pleadings are irrelevant to our disposition of the issues on appeal. We deny both requests.

2. We express no opinion concerning these later-added claims; the City's plea to the jurisdiction, and this interlocutory appeal, address only VRC's takings claims.

ty to replead. *Id.* In some instances, however, a plea to the jurisdiction may require the court to consider evidence pertaining to jurisdictional facts. *Id.* (citing *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000)). A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted. *Id.*

## WAIVER OF IMMUNITY BY REQUESTING ATTORNEY'S FEES

■ Initially, we review VRC's argument, made for the first time on appeal, that the City waived its immunity by requesting affirmative relief in the trial court in the form of attorney's fees. VRC relies on this Court's opinion in *Dequire v. City of Dallas,* 192 S.W.3d 663, 666 (Tex.App.– Dallas 2006), *rev'd,* 249 S.W.3d 428 (Tex. 2008). In *Dequire,* this Court concluded that the City's defensive claim for attorney's fees in response to the plaintiff's declaratory judgment claim was a claim for affirmative relief within the meaning of *Reata Construction Corp. v. City of Dallas,* 47 Sup.Ct. J. 408, 2004 WL 726906 (Tex. Apr. 2, 2004) (per curiam) (*Reata I*), *withdrawn on reh'g,* 197 S.W.3d 371 (Tex. 2006) (*Reata II*). VRC argues the City's request for attorney's fees in its post-remand answer constituted a request for affirmative relief and a waiver of the City's immunity.

However, in *Reata II* the supreme court withdrew its opinion in *Reata I* and clarified that a governmental entity bringing suit against a private entity does not have immunity as to the private entity's claims that are "germane to, connected with, and properly defensive to the [governmental entity]'s claims, to the extent [the private entity]'s claims offset those asserted by the [governmental entity]." 197 S.W.3d at 373. Here, VRC initiated suit, not the City. We cannot characterize VRC's constitutional takings claims as an offset to the City's derivative request for attorney's fees in defending the suit. *See Harris County Toll Road Auth. v. Southwestern Bell Tel., L.P.,* 263 S.W.3d 48, 64–65, No. 01–05–00668–CV, 2006 WL 2641204, at *12–13 (Tex.App.–Houston [1st Dist.] Sept. 14, 2006, pet. granted). *Dequire* is inapposite, and *Reata II* resolves the issue. Therefore, we reject VRC's argument that the City waived its immunity by requesting attorney's fees.

## VRC'S TAKINGS CLAIM

■ The Just Compensation Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amends. V, XIV; *see Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 933 (Tex.1998) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 175 n. 1, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made[.]" TEX. CONST. art. I, § 17. Although these takings provisions are worded differently, they are "comparable." *Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 669 (Tex.2004). VRC argues that the Texas Constitution provides at least as much protection as the United States Constitution, and both parties cite federal cases. *See id.* Sovereign (or governmental) immunity is waived for valid takings claims. *See City of Dallas v. Blanton,* 200 S.W.3d 266, 271 (Tex.App.–Dallas 2006, no pet.).[3]

 The law of inverse condemnation provides the basis for state-law takings. Inverse condemnation occurs when property is taken for public use without proper condemnation proceedings and the property owner attempts to recover compensation for that taking. *Blanton*, 200 S.W.3d at 271. To state a cause of action for inverse condemnation under the Texas Constitution, a plaintiff must allege: (1) an intentional governmental act; (2) that resulted in his property being taken, damaged, or destroyed; (3) for public use. *Id.* The City challenges the adequacy of VRC's allegations on all three elements. Because it is dispositive, we focus on the second element, the requirement of a taking.

 Takings are classified as either physical or regulatory. *Id.* VRC does not allege a physical taking, that is, an unwarranted physical appropriation or invasion of its property. *See id.* Instead, VRC claims the City has taken its property by means of regulatory action.[4] Traditionally, a compensable regulatory taking occurs when governmental regulations deprive the owner of all economically viable use of his property or totally destroy his property's value. *Mayhew*, 964 S.W.2d at 936. In this case, VRC did not plead or argue that the City had completely destroyed its trucks' value or its ability to use the trucks for any economically viable purpose. However, even if a governmental regulation has not completely destroyed the property's value, we recognize a regulatory taking if the governmental action unreasonably interferes with the owner's rights to use and enjoy his property. *See id.* at 935. We determine whether the government has effected a taking in this circumstance by considering two factors: (1) the economic impact of the regulation, and (2) the extent to which the regulation interferes with the owner's "distinct investment-backed expectations." *Id.* The second factor—the investment-baked expectations of the property owner—is critical in evaluating the reasonableness of the government's interference. *Id.* at 937. "The existing and permitted uses of the property constitute the 'primary expectation' of the [property owner] that is affected by regulation." *Id.* at 935. The extent of the governmental intrusion may be a question for the trier of fact, but whether the facts constitute a taking is a question of law. *Sheffield Dev. Co.*, 140 S.W.3d at 673; *Mayhew*, 964 S.W.2d at 932–33.

We conclude the Texas Supreme Court's opinion in *Mayhew v. Town of Sunnyvale* governs this case. In that case, the Mayhew family owned close to 1200 acres of land in Sunnyvale: 850 acres had been purchased before 1965 and had been used for ranching; 346 acres were purchased in 1985 and 1986 for development purposes. At the time in question, Sunnyvale's residential zoning laws limited property owners to one dwelling per acre, subject to exceptions approved by the Town council. 964 S.W.2d at 925–26. The Mayhews submitted a planned development proposal, requesting approval to build between 3,650 and 5,025 units on their land, which

3. "Sovereign immunity" refers to the State's immunity from suit and liability, and it protects the State and its subdivisions. "Governmental immunity" protects political subdivisions of the State, including counties, cities, and school districts. *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 688 n. 3 (Tex.App.–Dallas 2003, no pet.).

4. VRC alleges both a general regulatory taking and the more specific confiscatory taking, which applies in certain rate cases. We need not address issues concerning confiscatory takings in particular because we resolve this appeal on principles governing all regulatory takings.

amounted to more than three units per acre. The council reviewed the proposal in depth, but ultimately denied it. The Mayhews sued, alleging a taking as well as various constitutional and statutory violations. *Id.* at 926. The supreme court concluded that the value of the Mayhews' property had not been totally destroyed. *See id.* at 936–67. Thus, the court looked to the Mayhews' reasonable investment-backed expectations. As to the earlier-purchased land, the court looked to the historical use of the property (i.e., ranching) and concluded that history negated the possibility of reasonable investment-backed expectations like those in the development proposal.[5] *Id.* at 937. Finally, as to the later-acquired property, the court reasoned that "existing zoning of the property at the time it was acquired is to be considered in determining whether the regulation interferes with investment-backed expectations." *Id.* at 937–38. Because the Town's ordinance had limited development to one dwelling unit per acre at the time the property was acquired, the court concluded the Mayhews lacked a reasonable investment-backed expectation to build 3,600 units on their 1,200 acres. *Id.* at 938. Based on the absence of such expectations, the supreme court rendered judgment against the Mayhews on their takings claim. *Id.*

▮ In this case, the uncontroverted facts establish that the City's imposition of the $95 ceiling on nonconsent towing fees predated the very existence of VRC as a Nevada limited-liability company. It is also uncontroverted that VRC was aware of, and had complained of, the $95 ceiling when it applied to do business in Dallas

and was licensed to do so. Indeed, before VRC was licensed, it had undertaken its own study and determined the $95 fee would not allow it to make a profit. VRC's own license application even stated that the rate VRC expected to charge was set forth in section 48A–43, the provision limiting fees for nonconsent tows to $95. Nevertheless, VRC performed nonconsent tows in Dallas for some part of two years. We consider existing law regulating the use of property in determining whether the regulation interferes with investment-backed expectations of the property owner. *See id.* at 937–38. We conclude VRC had no reasonable investment-backed expectations of charging more than $95 when it began operations in Dallas. *See id.* at 937. Accordingly, we conclude VRC could not plead a valid state regulatory takings claim in this case.

### RIPENESS OF FEDERAL TAKINGS CLAIM

▮ The parties agree that VRC's federal takings claim is not technically ripe until the state claim is resolved. *See Williamson County Reg'l Planning Comm'n,* 473 U.S. at 195, 105 S.Ct. 3108 ("if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation"). Texas's inverse condemnation action for violation of Article I, section 17 of the Texas Constitution does provide an adequate procedure for seeking just compensation for a regulatory taking. *Town of Flower Mound v. Stafford Estates Ltd. P'ship,* 135 S.W.3d 620, 646 (Tex.2004). VRC has used this proce-

---

**5.** The court specifically stated:

 After four decades of ranching their property in a Town with a population of no more than 2,000 people, the Mayhews did not have a reasonable investment-backed ex-

pectation that they could pursue an intensive development of 3,600 units that would more than quadruple the Town's population.

*Id.* at 937.

dure and has been denied compensation. We reject the City's argument that a dismissal for want of jurisdiction is a failure to use the inverse condemnation procedure within the meaning of *Williamson County.*

■ Texas cases consistently describe regulatory takings claim under the Texas Constitution as comparable to the same claim under the United States Constitution. *See, e.g., Sheffield,* 140 S.W.3d at 669. This is clearly the case in regard to the importance of the reasonable investment-backed expectations of the property owner: *Mayhew*'s analysis of this factor relies almost exclusively on federal law. *See Mayhew,* 964 S.W.2d at 935–38; *see also Norman v. U.S.,* 429 F.3d 1081, 1093 (Fed.Cir.2005) (purpose of considering plaintiffs' investment-backed expectations is to limit recoveries to property owners who can demonstrate they bought property in reliance on state of affairs that did not include challenged regulatory regime). Under the circumstances of this case, we conclude the federal takings claim would be resolved identically to the state claim. Given the uncontroverted facts, VCR is not able to plead a valid regulatory takings claim under the Fifth and Fourteenth Amendments.

### CONCLUSION

■ When the relevant undisputed evidence negates jurisdiction, a plea to the jurisdiction must be granted. *Holland,* 221 S.W.3d at 643. Here, the undisputed evidence establishes VRC could not plead a valid regulatory takings claim. Thus, VRC has not overcome the City's governmental immunity, and the trial court lacks jurisdiction over the takings claims. We decide the City's single issue in its favor. We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing VRC's takings claims under both Article 1, section 17 of the Texas Constitution and the Fifth and Fourteenth Amendments to the United States Constitution for want of jurisdiction.