**CITY OF DALLAS, Appellant**

v.

**Dora SAUCEDO–FALLS, Brigitte Gassaway, Shirley Gray, John Martinez, Troy McClain, Mona Neill, Floyd Simpson, William Turnage, Cynthia Villareal, Ron Waldrop, Thomas Tanksley, Michael Pruitt, and Larry Anderson, Appellees.**

No. 05–08–00029–CV.

Court of Appeals of Texas, Dallas.

Aug. 18, 2008.

Rehearing Overruled Nov. 18, 2008.

Barbara E. Rosenberg, Thomas P. Perkins, Janice S. Moss, James Pinson, City of Dallas Attorney's Office, Dallas, TX, for Appellant.

Robert Charles Lyon, Robert Lyon & Associates, Rowlett, TX, Bob Gorsky, Christopher David Livingston, Lyon, Gorsky, Haring, and Gilbert, LLP, Dallas, TX, for Appellees.

Before Chief Justice THOMAS and Justices FITZGERALD and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

This is an interlocutory appeal of the trial court's order granting in part and denying in part the City of Dallas's plea to the jurisdiction. We reverse and render in part and reverse and remand in part for further proceedings.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2002, a coalition of police officers and firefighters presented the City with a signed petition seeking a special election on a pay increase for the City's sworn police officers and firefighters equal to 17% of their base salary. The City's secretary approved the petition and submitted it to the City Council. Negotiations for a salary increase between the City and representatives of the police and fire departments failed, and the City Council called for a special election on the pay increase for May 4, 2002. In the meantime, on March 20, 2002, the City Council passed Resolution No. 02–0982 (the March 2002 Pay Resolution), which approved a 5% pay increase in the base salary of each sworn employee of the police and fire departments for fiscal year (FY) 2002–03, with a similar pay increase for the next two fiscal years. The March 2002 Pay Resolution provided that it would become effective on October 1, 2002 if the voters did not approve the 17% pay increase in the May special election. The voters did not approve the pay increase. On September 30, 2002, one day before the March 2002 Pay Resolution was to become effective, the City Council passed another resolution; this one authorized a 5% pay increase for uniformed employees below the rank of deputy chief only, not for all sworn employees, and was to become effective October 29, 2002 (the September 2002 Pay Resolution). The City Council passed an appropriations ordinance adopting the FY 2002–03 budget containing the revised pay increase approved in the September 2002 Pay Resolution.

Appellees are City police officers and firefighters currently or formerly employed in the ranks of deputy chief or above who did not receive a pay increase pursuant to the September 2002 Pay Resolution. They sued the City for back pay and benefits they contend were required by the March 2002 Pay Resolution. The City filed a plea to the jurisdiction, which the trial court denied. The City appealed. Relying on *Reata Construction Corp. v. City of Dallas*, No. 02–1031, 2004 WL 726906 (Tex. Apr.2, 2004) (per curiam), *withdrawn on reh'g*, 197 S.W.3d 371 (Tex. 2006), we affirmed the denial of the plea to the jurisdiction, concluding that the City waived its immunity from suit by asserting a counterclaim for attorney's fees. *City of Dallas v. Saucedo-Falls*, 172 S.W.3d 703,

709 (Tex.App.-Dallas 2005), *rev'd on other grounds*, 218 S.W.3d 79 (Tex.2007). The City filed a petition for review in the Texas Supreme Court. While the petition was pending, the Texas Supreme Court granted rehearing in *Reata*, withdrew its original opinion, and substituted a new opinion in its place. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex.2006). The Texas Supreme Court noted that our opinion in this case relied on the withdrawn and replaced *Reata* opinion. *See City of Dallas v. Saucedo–Falls*, 218 S.W.3d 79, 79 (Tex.2007). As a result, the court granted the City's petition for review, reversed our judgment, and remanded this case to the trial court for further proceedings. *Id.* at 80.

On remand to the trial court, appellees filed their fourth amended petition, asserting state law claims for breach of contract, unjust enrichment, declaratory judgment, and mandamus and injunctive relief. Appellees also alleged, for the first time, a claim under section 1983. *See* 42 U.S.C. § 1983 (2003). They alleged that they had a property right to the 5% pay increase contained in the March 2002 Pay Resolution and that the City deprived them of that property right without due process, in violation of the constitution and laws of the United States. They further alleged that the City's failure to give them the pay increase violated Ordinance No. 16084 enacted by the City in 1979 (the 1979 Ordinance). They contend that the 1979 Ordinance required the City to maintain a certain percentage pay differential between grades in the sworn ranks of the police and fire departments, and the City's failure to give them the 5% pay increase in accordance with the March 2002 Pay Resolution violated the 1979 Ordinance be-cause it modified the pay differential between the ranks that existed before the September 2002 pay increase.

In response, the City filed a second plea to the jurisdiction seeking dismissal of appellees' claims. The trial court granted the City's plea to the jurisdiction on the state law claims, but denied it on the section 1983 claim. The City appeals.[1]

## II. PLEA TO THE JURISDICTION

### A. Propriety of Plea to Challenge Validity of Claim

Appellees initially contend that a plea to the jurisdiction is not the appropriate procedure by which to challenge their section 1983 claim. They argue that the City does not have immunity for a section 1983 claim and that the trial court should not consider the merits of the claim when it decides a plea to the jurisdiction. They argue that the proper procedure to test the merits of the claim is by a motion for summary judgment. But the City contends that appellees' pleadings were not sufficient to allege a valid section 1983 claim and that, because it is not a valid claim, the pleadings do not invoke the trial court's jurisdiction over that claim. It argues that a plea to the jurisdiction is the proper procedure for such a challenge. We agree with the City.

■ A party may challenge the trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004). Texas courts have considered the issue in other cases in which a governmental unit used the plea to the jurisdiction procedure to challenge the validity of a section 1983 claim. *See, e.g., Myers v. Adams*, 728 S.W.2d 771, 772

---

1. Appellees originally cross-appealed the trial court's order granting the City's plea to the jurisdiction on the state law claims, but they moved to dismiss the appeal on those claims. We granted the motion, and those claims are not before us.

(Tex.1971) (affirming trial court's judgment of dismissal of prison inmate's section 1983 claim because prisoner did not assert meritorious claim); *Gomez v. Hous. Auth. of the City of El Paso,* 148 S.W.3d 471, 476–82 (Tex.App.-El Paso 2004, pet. denied), *cert. denied,* 546 U.S. 872, 126 S.Ct. 379, 163 L.Ed.2d 166 (2005); *City of Fort Worth v. Robles,* 51 S.W.3d 436, 443–44 (Tex.App.-Fort Worth 2001, pet. denied), *disapproved of on other grounds by City of Grapevine v. Sipes,* 195 S.W.3d 689, 695 & n. 5 (Tex.2006).

▆▆▆ When the plea to the jurisdiction challenges the existence of jurisdictional facts, the court considers the relevant evidence submitted by the parties when it is necessary to resolve the jurisdictional issue. *Id.* at 227. This procedure generally mirrors that of a summary judgment under rule of civil procedure 166a(c). *Id.* at 228. The plaintiff has the burden to plead facts affirmatively showing the trial court has subject matter jurisdiction. *Id.* at 226. The governmental unit then has the burden to assert and support its contention, with evidence, that the trial court lacks subject matter jurisdiction. *Id.* at 228. If it does so, the plaintiff must raise a material fact issue regarding jurisdiction to survive the plea to the jurisdiction. *Id.* at 228.[2]

## B. Standard of Review

▆▆▆ Whether the trial court has subject matter jurisdiction is a question of law which we review de novo. *Miranda,* 133 S.W.3d at 226. In conducting our review,

we construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *Id.* at 226–27. We consider the pleadings and the evidence pertinent to the jurisdictional inquiry. *Id.*; *City of Dallas v. First Trade Union Sav. Bank,* 133 S.W.3d 680, 686 (Tex.App.-Dallas 2003, pet. denied). If the evidence creates a fact issue concerning jurisdiction, the plea to the jurisdiction must be denied. *Miranda,* 133 S.W.3d at 227–28. If the evidence is undisputed or fails to raise a fact issue concerning jurisdiction, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. This standard "protect[s] the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Id.* (quoting *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000)).

### III. SECTION 1983

▆▆▆ Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. A claim under section 1983 must allege two essential elements: (1) the conduct complained of was committed by a person acting under color of state

---

**2.** Appellees argue that *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), holds that a trial court must exercise jurisdiction over a section 1983 action and cannot grant a plea to the jurisdiction dismissing that claim. We do not agree. *Howlett* held that a state court could not refuse to entertain a section 1983 claim on the ground that the claim was barred by sovereign immu-

nity. *See id.* at 356, 110 S.Ct. 2430. It held that a state court could apply its own neutral procedural rules to federal claims, unless those rules are preempted by federal law. *Id.* at 372, 110 S.Ct. 2430. The plea to the jurisdiction procedural rule is such a neutral state procedural rule. *See Thomas v. Allen,* 837 S.W.2d 631, 632–33 (Tex.1992); *Myers,* 728 S.W.2d at 772.

law, and (2) the conduct deprived a person of a federally protected right. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The City does not dispute that municipalities are included within the definition of "person" for purposes of a section 1983 claim. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

 The first step in analyzing appellees' claim under section 1983 is to determine whether they have alleged a property right recognized by federal law. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Section 1983 does not create substantive rights; it provides a remedy for a violation of a federal right created elsewhere. *Albright*, 510 U.S. at 271, 114 S.Ct. 807. Therefore, appellees must allege a property right created by a statute, ordinance, or regulation. *See Roth*, 408 U.S. at 577, 92 S.Ct. 2701 (property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain bene-

fits and that support claims of entitlement to those benefits"). The "hallmark" of a property right is "an individual entitlement grounded in state law which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11–12, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Goss v. Lopez*, 419 U.S. 565, 573–74, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); and *Roth*, 408 U.S. at 576–78, 92 S.Ct. 2701).

Appellees' pleadings allege a section 1983 claim encompassing violations of the Due Process Clause of the Fourteenth Amendment and the Just Compensation Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment.[3] *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 175 n. 1, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

### A. Fifth Amendment "Takings" Claim

 The trial court rendered a supplemental order in which it denied the City's plea to the jurisdiction on appellees' "claims of a taking under the Fifth Amendment and 42 U.S.C. § 1983...." The City contends that appellees' takings

---

**3.** Appellees' live pleading states, "the City has deprived [appellees] of their property interests, without due process, by not paying them their raise." Appellees' trial brief states that "the City decided to deny [appellees] a 5% raise. This denial occurred in direct contradiction to the 1979 Ordinance and the Resolution." At the hearing on the plea to the jurisdiction, counsel for appellees stated

the City passed the resolution that said, well, we're giving [the raise] to all the sworn employees except for you. And that's a property right. It's clear. It's constitutional. And it's not an adverse—or it's not—yeah, it's not an adverse [sic] condemnation, it's *not a taking*, it's a due process right (emphasis added).

Later, when the trial court asked counsel to explain the distinction between appellees' Fifth Amendment and Fourteenth Amendment claims, he said, "I think what we're trying to do is tie that 14th Amendment—or tie the 5th Amendment in with the 14th Amendment." Although the record appears to indicate that appellees did not allege a taking claim under the Fifth Amendment, the trial court's supplemental order denying the plea to the jurisdiction references appellees' "claims of a taking under the Fifth Amendment and 42 U.S.C. § 1983" and specifically states that the claim is "allowed to go forward."

claim under the Fifth Amendment is not ripe because they have not pursued a state takings claim. To the extent appellees' pleadings allege a violation of the Just Compensation Clause of the Fifth Amendment, we agree. *See City of Dallas v. VRC LLC,* 260 S.W.3d 60, 67 (Tex.App.-Dallas 2008, no pet. h.) (citing *Williamson County Reg'l Planning Comm'n,* 473 U.S. at 195, 105 S.Ct. 3108).

Accordingly, we reverse the trial court's denial of the City's plea to the jurisdiction on appellees' Fifth Amendment takings claim and render judgment for the City on that claim.

**B. Claims for Violation of Due Process**

■ Appellees also alleged that the City violated their due process rights guaranteed by the Fifth and Fourteenth Amendments. U.S. Const. amend. V, XIV, § 1. The Due Process Clause of the Fifth Amendment to the United States Constitution applies only to violations of constitutional rights by the United States or a federal actor. *See Jones v. City of Jackson,* 203 F.3d 875, 880 (5th Cir.2000). Appellees' pleadings affirmatively negate that the City is a federal actor. As a result, the trial court erred by denying the City's plea to the jurisdiction on this ground.

We reverse the trial court's denial of the City's plea to the jurisdiction on appellees' claim for violation of the Due Process Clause of the Fifth Amendment and render judgment for the City on this claim.

■ The Due Process Clause of the Fourteenth Amendment encompasses both substantive and procedural due process. *See Byers v. Patterson,* 219 S.W.3d 514, 524–26 (Tex.App.-Tyler 2007, no pet.). Appellees do not allege which of these they contend the City violated. A violation of substantive due process occurs when the government deprives individuals of consti-tutional rights by an arbitrary use of its power. *Id.* at 525. A procedural due process violation occurs when a government makes decisions without appropriate safeguards. *Id.* at 526. Procedural due process requires an opportunity for a hearing appropriate to the nature of the case. *Id.* Under either claim, appellees must allege a constitutionally protected property right.

**1. Claim that the March 2002 Pay Resolution created a property right**

Appellees initially contend that the March 2002 Pay Resolution was final and binding on the City and required the City to provide all sworn police officers and firefighters a 5% pay increase regardless of rank. They argue that the City deprived them of that property right by not implementing the pay increase. The City argued in its plea to the jurisdiction that appellees never had a property right to the 5% pay increase and that the March 2002 Pay Resolution only announced the intent to provide a pay increase. It argued that the March 2002 Pay Resolution directed the city manager to submit an increase in the budget but did not require the City Council to pass the increase. The City argues that appellees' pleadings do not allege a valid section 1983 claim because they did not have a property right to the pay increase contained in the March 2002 Pay Resolution.

**March 2002 Pay Resolution**

The March 2002 Pay Resolution provides, in relevant part:

> **SECTION 1.** That the City Manager is directed to include in the budget for fiscal year 2002–03 a five percent increase in the base salary of each sworn employee of the Police and Fire Departments of the City, to be effective October 1, 2002.
>
> **SECTION 2.** That it is the intent of the City Council that a five percent in-

crease in the base salary of each sworn employee of the Police and Fire Departments also be included in the budget for fiscal year 2003–04, to be effective October 1, 2003, and the budget for fiscal year 2004–05, to be effective October 1, 2004.

**SECTION 3.** That, if a police and fire pay proposition is submitted to the qualified voters of the City of Dallas at a May 4, 2002 special election and the proposition is not approved by the qualified voters participating in the election, then this resolution will take effect on May 8, 2002, after the City Council's canvassing of the results of the May 4, 2002 election. If, however, a police and fire pay proposition is submitted at a May 4, 2002 special election and is approved by the qualified voters participating in the election, then this resolution will have no effect, and it is accordingly so resolved.

 The City, as a home rule city, derives it power to legislate from the Texas Constitution and the local government code. *See* TEX. CONST. art. XI, § 5; TEX. LOCAL GOV'T CODE ANN. § 51.072 (Vernon 2008); *Int'l Ass'n of Fire Fighters, Local 1173 v. City of Baytown*, 837 S.W.2d 783, 788 (Tex.App.-Houston [1st Dist.] 1992, writ denied). The power of a home rule city is subject to and may be limited only by its charter, the constitution, or by general law. *Local 1173*, 837 S.W.2d at 788. Under Texas law, the governing body of a home rule city may set the amount of compensation for its employees. TEX. LOCAL GOV'T CODE ANN. § 141.004 (Vernon 2008).

 The City establishes its standards for compensation in its charter and code. *See, e.g.,* DALLAS, TEX., CHARTER ch. XXIV, § 18 (2006); DALLAS CITY CODE §§ 34–15– 34–16 (1997). The City Council must approve all City employee position classifica-

tions and their corresponding pay rates. DALLAS CITY CODE § 34–4(39) (1997) (defining Salary and Classification Schedule as "a city council-approved resolution that establishes all position classifications for city employment and the corresponding pay rates"). The City Charter addresses the procedure by which appropriations for pay increases are approved. *See* DALLAS, TEX., CHARTER ch. XI, § 3 (2006). It requires the city manager to submit an estimated budget to the City Council on August 15 for the next fiscal year beginning October 1. The City Council then must pass an appropriations ordinance on first reading; conduct a public hearing on the proposed budget; publish the ordinance, noting items in the city manager's estimate that were omitted or changed by the City Council; and, after ten days, pass the appropriations ordinance on final reading. After final passage, the appropriations become effective immediately and the funds are appropriated effective October 1. The only authorized City expenditures are those made through the City Council-approved appropriations ordinance. *See id.* § 6 (2006) ("No money shall be drawn from the city treasury, nor shall any obligation for the expenditure of money be incurred, except in pursuance of appropriation made by the council ....") & ch. XXIV § 18 ("The wages, hours and conditions of employment of any and all of the city employees shall be fixed and approved by the city council.").

When the City Council passed the appropriations ordinance for the FY 2002– 2003 budget, the City Council did not approve the pay raise contained in the March 2002 Pay Resolution. Instead, it approved a 5% pay increase for sworn employees below a specified rank only. Although appellees argue that the March 2002 Pay Resolution is binding on the City Council, they have not cited any authority to sup-

port that contention, and we have not found any authority stating that the City Council does not have the power to modify or rescind its resolutions.[4] Additionally, appellees have not cited any authority stating that the March 2002 Pay Resolution was exempted from the procedure required by the City Charter for implementing a pay increase for the next fiscal year. And the language of the March 2002 Pay Resolution contemplates that the procedure would be followed.

Consequently, we conclude that the City Council acted within its legislative authority when it did not approve the pay increase contained in the March 2002 Pay Resolution. *See Local 1173,* 837 S.W.2d at 788. And, as a result, we also conclude that appellees have not alleged "an individual entitlement grounded in state law which cannot be removed except 'for cause'" created by that pay resolution. *See Logan,* 455 U.S. at 430, 102 S.Ct. 1148; *City of Beaumont v. Bond,* 546 S.W.2d 407, 410–11 (Tex.Civ.App.-Beaumont 1977, writ ref'd n.r.e.). At most, appellees alleged that they had an expectation of a pay increase. *See Roth,* 408 U.S. at 577, 92 S.Ct. 2701; *Jackson v. Houston Indep. Sch. Dist.,* 994 S.W.2d 396, 399–400 (Tex. App.-Houston [14th Dist.] 1999, no pet.). But because appellees have not alleged a vested property right entitling them to federal protection pursuant to the March 2002 Pay Resolution, they did not allege a valid section 1983 claim based on that resolution. *See Byers,* 219 S.W.3d at 526.

**2. Claim that the 1979 Ordinance created a property right**

Appellees also argue on appeal that the City's decision to deny them a 5% pay increase by passing the September 2002 Pay Resolution violated the percentage pay differential requirement contained in the 1979 Ordinance, and, as a result, deprived them of a constitutionally protected property right. They contend that the 1979 Ordinance requires the City to maintain the current percentage pay differential and, by implementing the FY 2002–2003 budget, the City created an ongoing disparity in their salaries that will be renewed and increased each time the City implements a pay increase. The City argues that appellees did not plead a property right because whether government employees receive a pay increase is a legislative determination and not a protected property right. It contends that appellees were never entitled to a 5% increase and the 1979 Ordinance does not provide an enforceable right.

**The 1979 Ordinance**

In a special election held on January 20,1979, the voters of Dallas approved two propositions concerning the pay of employees in the police and fire departments. The City passed the 1979 Ordinance implementing those voter-approved propositions. The relevant portion of the 1979 Ordinance provides:

> Be it ordained that: ... (2) The current percentage pay differential between grades in the sworn ranks of the Dallas Police Force and the Fire Fighter and Rescue Force shall be maintained....

Because the 1979 Ordinance was implemented following a voter-approved special election, the City Charter states that the

---

**4.** We note that the Dallas City Charter appears to make a distinction between resolutions or ordinances passed by the City Council and ordinances passed by voter propositions. In the latter situation where voters have passed a proposition approving

an ordinance, the ordinance is a "valid and binding ordinance of the city, and ... cannot be repealed or amended except by a vote of the people." DALLAS, TEX., CHARTER ch. XVIII, § 14 (2006).

ordinance is binding on the City and cannot be repealed or amended except by a vote of the people:

> If a majority of the qualified electors voting on said proposed ordinance shall vote in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the city, and any ordinance proposed by petition, or which shall be adopted by a vote of the people, cannot be repealed or amended except by a vote of the people.

DALLAS, TEX., CHARTER ch. XVIII, § 14. It is undisputed that this ordinance has not been repealed or amended.

In their live pleading, appellees alleged, "By omitting those holding the rank of Deputy Chief and above from the FY 2002–2003 budgeted pay raise, the pay differential between the ranks as they existed before the raise has been modified in violation of the 1979 Ordinance 16084." They later alleged, "Plaintiffs would show that pursuant to the [1979] Ordinance and the [March 2002 Pay] Resolution that they had a property interest in receiving their 5% raise and that the City has deprived them of their property interest, without due process, by not paying them their raise."

■ We construe these pleadings to state that the 1979 Ordinance created a property right to the 5% pay increase because the ordinance required the City to maintain the percentage pay differential, and the pay increase that was passed, the September 2002 Pay Resolution, modified that required percentage pay differential. State law sources for property interests include municipal ordinances. See Roth, 408 U.S. at 577, 92 S.Ct. 2701.

■ We agree with the City that the 1979 Ordinance did not create a property right to a specific pay increase, in this case, a 5% pay increase. Additionally, this Court has previously held that the 1979

Ordinance is ambiguous about whether the parties intended the percentage pay differential language to apply to all pay resolutions passed after 1979. See Arredondo v. City of Dallas, 79 S.W.3d 657, 668 (Tex. App.-Dallas 2002, pet. denied). In Arredondo, we concluded that the 1979 Ordinance was reasonably susceptible to more than one meaning, and we remanded the issue to the trial court for resolution by the fact-finder. Id. That issue has not been resolved on remand. See City of Dallas v. Albert, 214 S.W.3d 631 (Tex. App.-Dallas 2006, pet. filed). However, because the 1979 Ordinance is binding on the City until it is amended or repealed by the voters, it arguably created a right to the maintenance of a certain percentage pay differential that was violated when the City passed the September 2002 Pay Resolution limiting the pay increase to officers of a certain rank. As a result, we conclude that appellees' pleadings allege sufficient facts to raise a fact issue about whether they have a constitutionally protected property right. See Logan, 455 U.S. at 430, 102 S.Ct. 1148; Roth, 408 U.S. at 577, 92 S.Ct. 2701; City of Beaumont, 546 S.W.2d at 410–11.

### 3. Claim that City's conduct violated Due Process Clause

In addition to alleging a constitutionally protected property right, appellees were also required to allege sufficient facts to raise a fact issue about whether the City deprived them of that property without due process. See Patterson, 219 S.W.3d at 525–26. On appeal, appellees argue that "final policymakers of the City decided to deny Plaintiffs a 5% raise. This denial occurred in direct contradiction to the Ordinance and the Resolution." They contend that this is sufficient to meet the pleading requirements. However, appellees did not allege what process they were due, or that the City's action in denying

them the pay increase was arbitrary and capricious or denied them an opportunity to be heard. *See Logan,* 455 U.S. at 428–35, 102 S.Ct. 1148; *Patterson,* 219 S.W.3d at 525–26.

We conclude that appellees' pleadings do not affirmatively demonstrate the trial court's jurisdiction on their Fourteenth Amendment due process claim, but also do not affirmatively demonstrate incurable defects in jurisdiction. *Miranda,* 133 S.W.3d at 226–27. As a result, *Miranda* requires that appellees be given an opportunity to replead to cure the pleading defect. *Id.* Accordingly, we reverse the trial court's denial of the City's plea to the jurisdiction on appellees' Fourteenth Amendment due process claim and remand to that court for further proceedings consistent with this opinion.

## IV. CONCLUSION

We reverse the trial court's order denying the City's plea to the jurisdiction on appellees' takings and due process claims under the Fifth Amendment and section 1983 and render judgment for the City on those claims. We reverse the trial court's order denying the City's plea to the jurisdiction on appellees' due process claim under the Fourteenth Amendment and section 1983 and remand that claim for further proceedings consistent with this opinion.