**M.F. GUETERSLOH, Jr., Appellant,**

v.

**The STATE of Texas, The Public Utility Commission, The Texas Water Commission, The City of Lubbock, and James Miller, Receiver of the Carlisle Water Supply Company, Appellees.**

No. 03–95–00626–CV.

Court of Appeals of Texas, Austin.

Sept. 18, 1996.

Rehearing Overruled Oct. 30, 1996.

Marilyn Phelan, Lubbock, for Appellant.

Jeff Hartsell, City of Lubbock, Office of the City Attorney, Lubbock, Dan Morales, Attorney General, James Todd, Assistant Attorney General, General Litigation Division, Austin, for Appellees.

Before POWERS, JONES and B.A. SMITH, JJ.

JONES, Justice.

Appellant, M.F. Guetersloh, Jr., sued the State of Texas, the Public Utility Commission, the Texas Water Commission,[1] the City of Lubbock, and James Miller, Receiver of the Carlisle Water Supply Company, appellees, asserting a takings claim under the Fifth and Fourteenth Amendments to the United States Constitution. The district court granted summary judgment against Guetersloh on the ground that his federal takings claim was barred by res judicata because the claim could have been brought in his prior inverse-condemnation suit. In a single point of error, Guetersloh asserts that his federal takings claim was not ripe until his earlier suit was concluded, so he could not have brought the federal claim in the prior suit. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Guetersloh was previously the owner and operator of the Carlisle Water Supply Company, a small water utility that supplied water to a handful of families in the Carlisle community outside of Lubbock. In 1978 Guetersloh sold the utility, retaining a vendor's lien and deed of trust on the property as security for a promissory note. In 1983 the new owner allegedly violated an order of the Public Utility Commission, resulting in the appointment of a receiver to manage the utility's assets. During the receivership, the owner defaulted on his payments to Guetersloh, who foreclosed on the utility in 1985. The State, however, judicially enjoined Guetersloh from entering the property or interfering with the receiver's right of legal possession.

In 1987 the City of Lubbock annexed the Carlisle area and built a new water system, continuing the receivership of Guetersloh's utility until the new water system was completed and began providing water services to all the residents of Carlisle. After the customers of Carlisle Water Supply were transferred to the City of Lubbock, Guetersloh was granted permission to take possession of the utility. By that time, however, all the utility's customers were gone and its pipes and workings were badly in need of repair. At no time did the State pay Guetersloh for any use of or injury to the utility.

During the time the receiver was operating the utility, Guetersloh filed an inverse-condemnation claim against the City of Lubbock and the receiver in Lubbock County district court, initially asserting causes of action under the takings clauses of both the Texas Constitution[2] ("the state-law claim") and the United States Constitution[3] ("the federal-law claim"). The State of Texas, on behalf of the Public Utility Commission, intervened in the

---

1. The Texas Water Commission has since been converted into the Texas Natural Resource Conservation Commission. *See* Act of July 30, 1991, 72d Leg., 1st C.S., ch. 3, § 1.085, 1991 Tex. Gen. Laws 4, 42.

2. "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17.

3. "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend V.

suit. Guetersloh later added the Texas Water Commission as a defendant. Without comment or explanation, Guetersloh subsequently dropped the federal-law claim from his suit, leaving only the state-law claim. The district court in Lubbock County granted an interlocutory summary judgment in favor of all defendants except the Public Utility Commission. The court then transferred venue in the case to Travis County. The district court in Travis County later rendered a final summary judgment in favor of the Public Utility Commission; this had the effect of making the interlocutory summary judgment in favor of the other defendants final also.

Guetersloh appealed the trial court's judgment rejecting his state-law claim. This Court affirmed, reasoning that the alleged taking was a valid exercise of state police power, for which no compensation is required. *Guetersloh v. Public Util. Comm'n,* No. 3–90–161–CV (Tex.App.-Austin Aug. 14, 1991, writ denied) (not designated for publication). Guetersloh's application for writ of error to the Texas Supreme Court was denied.

Guetersloh then filed suit on his federal-law claim in federal district court. Named as defendants, among others, were the State of Texas, the Public Utility Commission, the Texas Water Commission, and the receiver. The district court dismissed the claim, ruling that it was barred by the statute of limitations, res judicata, and the Eleventh Amendment to the U.S. Constitution. The Fifth Circuit Court of Appeals modified the judgment to hold that Guetersloh's claim was barred solely by the Eleventh Amendment. *Guetersloh v. State of Texas,* No. 93–8729, 25 F.3d 1044 (5th Cir. June 3, 1994) (not designated for publication), *cert. denied,* —— U.S. ——, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). The U.S. Supreme Court denied Guetersloh's application for a writ of certiorari.

Guetersloh then filed the present suit in Travis County district court, reurging his federal-law claim. The court granted appellees' motion for summary judgment, ruling that Guetersloh's federal-law claim was barred by res judicata. It is from this judgment that Guetersloh now appeals.

## DISCUSSION

■ Under the "transactional" approach to res judicata adopted in Texas, a claim is precluded "if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 631 (Tex.1992). In the present case, Guetersloh's federal-law and state-law claims are simply two alternative theories by which he attempts to recover for the same alleged taking, so there is no issue of whether the two claims arose out of the same factual transaction. Thus, the dispositive issue here is whether Guetersloh's federal-law claim *could have been* litigated in the prior suit in which he pursued his state-law claim to a final judgment.

Guetersloh bases his argument against the application of res judicata entirely on his interpretation of *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), where the United States Supreme Court held that "if a State provides an adequate procedure for seeking just compensation [for a taking], the property owner cannot claim a violation of the [federal] Just Compensation Clause until it has used the [state] procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. at 3121. He asserts that he was precluded from asserting his federal-law claim in his first suit because, under the holding of *Williamson County,* that claim was not yet ripe. Guetersloh argues that he was required to unsuccessfully seek compensation in the state courts under Article I section 17 of the Texas Constitution before his federal-law claim even existed; that only upon denial of just compensation from the state was his federal-law claim mature; and that therefore the nonexistent, unripe federal claim could not have been litigated in his state inverse-condemnation suit. In Guetersloh's view, if he were now precluded by res judicata from bringing his federal-law claim, the effect would be to deny him altogether a forum in which to argue the merits of his Fifth Amendment takings claim.

■ Facially, Guetersloh's arguments sound appealing. The Supreme Court in

*Williamson County* held that a plaintiff seeking to assert a federal takings claim under the Fifth Amendment must first have unsuccessfully sought compensation through the state procedures for doing so. 473 U.S. at 194, 105 S.Ct. at 3120. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* In the present case, Guetersloh contends that this requirement was not and could not be met until he pursued his state-law claim in the state courts and was denied relief. Thus, Guetersloh argues that his federal-law claim was not ripe for determination by the state court at that time, could not have been brought with his state claim, and, therefore, could not be subject to res judicata. We disagree.

■ First, state courts clearly have jurisdiction to resolve takings claims based on federal law. Moreover, the Texas Rules of Civil Procedure expressly provide for the simultaneous presentation of multiple claims, alternative theories, and contingent causes of action:

### RULE 48. ALTERNATIVE CLAIMS FOR RELIEF

A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. . . .

### RULE 51. JOINDER OF CLAIMS AND REMEDIES

(a) **Joinder of Claims.** The plaintiff in his petition . . . may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party. . . .

(b) **Joinder of Remedies.** Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive right of the parties. . . .

Tex.R. Civ. P. 48, 51.

■ Thus, with limited exceptions not applicable here, under Texas law the mere fact that a cause of action is contingent on the outcome of another suit does not prevent the two claims from being raised and litigated simultaneously in the same suit. For example, in *Getty Oil Co. v. Insurance Co. of North America*, 845 S.W.2d 794 (Tex.1992), Getty Oil purchased chemicals from NL Industries, Inc. under a contract that arguably required NL to obtain insurance on Getty's behalf. An accident involving the chemicals occurred. After the parties litigated various liability issues favorably to NL, Getty sued NL for insurance coverage. Getty sought to avoid a res judicata bar by arguing that its insurance claims against NL did not accrue until judgment in the first suit was rendered resolving the liability issues. Relying on rule 51(b), the supreme court rejected this argument:

> Getty argues that res judicata cannot bar its present claims against NL because these claims did not accrue until judgment was rendered in the [*Getty Oil Corp. v.*] *Duncan* [721 S.W.2d 475 (Tex.App—Corpus Christi 1986)] suit. That is, Getty had no liability and hence no need for insurance coverage until liability was assigned. The contingent nature of these claims, however, does not preclude the operation of res judicata. We held in *Barr* that "[a] subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which, through the exercise of diligence, could have been litigated in a prior suit." 837 S.W.2d at 631. Getty could have asserted its present claims in the *Duncan* suit, with their resolution being contingent on the plaintiffs' claims.

*Id.* at 799.

Likewise, in the present case, Guetersloh's federal-law claim was contingent on an unsuccessful outcome in his state-court suit involving his state-law claim. Under rules 51 and 48 of the Texas Rules of Civil Procedure and the supreme court's holding in *Getty Oil*, nothing prevented Guetersloh from simultaneously raising his federal-law and state-law claims in the same suit. Accordingly, his "not yet accrued" argument does not provide him an escape from the bar of res judicata.

■ Nonetheless, Guetersloh also contends that he has a right to litigate his

federal-law claim in federal court. He argues that, since federal courts will not relitigate a federal-law issue that has already been tried in state court, a procedure whereby he is required to present both his state-law and his federal-law claims initially in state court would effectively preclude him from ever having his federal-law claim decided by a federal court.

■■■ Leaving aside the question of the Eleventh Amendment, a plaintiff generally has the right to have his federal-law claim litigated in a federal court. The United States Supreme Court has recognized "the primacy of the federal judiciary in deciding questions of federal law." *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 415–16, 84 S.Ct. 461, 465, 11 L.Ed.2d 440 (1964). In the present case, however, Guetersloh did not avail himself of the procedure by which he could have preserved his federal-law claim while proceeding to litigate his state-law claim in state court. In *England,* an abstention case, the Supreme Court set forth a procedure by which would-be federal-law claimants may litigate their state-law claims and still return to federal district court on their federal-law claims if the results in state court are unfavorable. The court held that, following federal-court abstention, a plaintiff is not required to litigate his federal claims in the state court; he has only to inform the state court what his federal claims are, so that the state statute or requirement can be construed "in light of" those claims. *Id.* at 420, 84 S.Ct. at 467. This "reservation" by the would-be federal claimant was held to occur in three steps: (1) the litigant first files in federal court; (2) the federal court abstains and stays the federal proceedings until the state courts resolve all state-law questions; and (3) the litigant informs the state courts of his intention to return, if necessary, to federal court on his federal constitutional questions after the state-court proceedings are concluded. *Id.* at 416–22, 84 S.Ct. at 465–68. When a proper reservation has been made, the litigant's right to return to the federal courts must in all events be preserved. *Id.* at 421–22, 84 S.Ct. at 468. However, if a party is found to have freely sought a binding adjudication of *all* his claims in state court, and he has failed to make a proper reservation to the disposition of the entire case by the state courts, then that party has in effect foregone his right to return to federal court to bring his federal claim. *Id.* at 419, 84 S.Ct. at 467.

The Fifth Circuit applied the *England* procedural requirements broadly in *Jennings v. Caddo Parish School Board,* 531 F.2d 1331 (5th Cir.1976). Although not an abstention case, the court held that "had appellant wished to reserve her constitutional claims for subsequent litigation in federal court, she could have done so by making on the state record a reservation to the disposition of the entire case by the state courts." *Id.* at 1332.

Although *England* and *Jennings* were in the contexts of medical licensees and racial discrimination, respectively, the Eleventh Circuit's decision in *Fields v. Sarasota Manatee Airport Authority,* 953 F.2d 1299 (11th Cir.1992), is squarely on point. *Fields* resolves the question of how *Williamson County* and *England* work together in the context of a takings case. *Fields* points out that the three-step *England* process is not applicable to a takings clause claim, because *Williamson County* ripeness requirements effectively prevent a litigant from first filing in a federal court. *Fields,* 953 F.2d at 1305. The *Fields* court held, however, that a "*Jennings* reservation" (i.e., a reservation not preceded by federal court abstention) can be made only if the would-be federal court litigant is pursuing state-court proceedings "involuntarily." *Id.* at 1306 (construing *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). The court held that a litigant is "involuntarily" in state court if one of two prerequisites is met: (1) the litigant is a defendant in a non-removable state-court action and wishes to pursue a federal counterclaim, or (2) federal law imposes an exhaustion requirement upon a would-be federal court litigant as a precondition of bringing his federal claim in federal court. 953 F.2d at 1306. By operation of *Williamson County,* federal takings claims satisfy the second prerequisite. *Id.* Hence, the *Fields* court held that, if the appropriate reservation is made in state court,

would-be federal court litigants who are forced to pursue state court proceedings in order to satisfy exhaustion requirements imposed by federal law incident to a takings clause claim are "involuntarily" in state courts, and therefore qualify for the exception to generally applicable res judicata principles.

*Id.*

In the present case, Guetersloh was involuntarily in state court, because he was fulfilling the *Williamson County* requirements. However, the record does not show that he made or attempted to make any reservation of his federal-law claim through the procedures outlined above. Thus, although he could, with the exercise of diligence, have preserved his right to return to federal court to litigate his federal-law claim, he did not do so.

## CONCLUSION

We conclude that Guetersloh's federal-law claim could have been raised in his first state-court suit, thus making res judicata principles applicable. We also conclude that Guetersloh does not come within an exception to res judicata, because he failed to make a proper reservation of his federal-law claim for possible litigation in and resolution by a federal court. We overrule Guetersloh's point of error and affirm the trial court's judgment.